**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TRANSPERFECT HOLDINGS, LLC,

       Plaintiff,

    v.

ROBERT PINCUS and CREDIT SUISSE
SECURITIES (USA) LLC,

       Defendants.

C.A. No. 22-1477-JLH

## MEMORANDUM OPINION

Jeremy D. Eicher, EICHER LAW LLC, Wilmington, DE; Martin P. Russo, Robert Sidorsky,
Daniel Branower, RUSSO PLLC, New York, NY,

    Attorneys for Plaintiff TransPerfect Holdings, LLC.

Douglas D. Herrmann, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, DE; John K.
Villa, Charles Davant IV, Anne M. Rucker, William Donnelly, WILLIAMS & CONNOLLY LLP,
Washington, DC,

    Attorneys for Defendant Robert Pincus.

David S. Eagle, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, DE; Herbert S.
Washer, Edward Moss, Connor O'Shea, CAHILL GORDON & REINDEL LLP, New York, NY,

    Attorneys for Defendant Credit Suisse Securities (USA) LLC.

June 4, 2024
Wilmington, DE

**JENNIFER L. HALL, U.S. DISTRICT JUDGE**

This federal case is the latest chapter in a long-running saga that every member of the Delaware Bar is likely familiar with.[1]  The dispute emanates from the sale of TransPerfect Global, Inc. ("TPG") pursuant to an auction ordered by former-Chancellor Bouchard of the Delaware Court of Chancery.  The Chancery Court appointed Defendant Robert Pincus to conduct the auction process for the forced sale of the company.  Pincus retained Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") as a financial advisor.  Plaintiff won the auction and is now the owner of TPG.

In this case, Plaintiff alleges that Defendants violated the federal securities laws by telling Plaintiff that it had the lowest bid for TPG at a time when Plaintiff in fact had the highest bid, and that their misrepresentations caused Plaintiff to bid more (and pay more) for the company than it otherwise would have.

Credit Suisse (D.I. 20) and Pincus (D.I. 24) have both moved to dismiss.  The motions are fully briefed.  Defendants make numerous arguments in support of dismissal.  Because I agree with one of their arguments—that Plaintiff's claims are barred by the statute of limitations—I do not address the rest.  Accordingly, Defendants' motions to dismiss will be granted, and Plaintiff's Complaint will be dismissed with prejudice.

---

[1] *See, e.g., TransPerfect Glob., Inc. v. Ross Aronstam & Moritz L.L.P.,* No. 2021-65-KSJM, 2022 WL 803484, at *1 (Del. Ch. Mar. 17, 2022) (remarking that the background of the "TransPerfect saga . . . should be familiar to even the most casual reader of Chancery opinions").

I.      BACKGROUND[2]

       A.      **Prior litigation**

TPG was founded by Philip Shawe ("Shawe") and Elizabeth Elting ("Elting").  They used to be co-owners of TPG, but their relationship deteriorated.  In May 2014, Elting filed a petition in the Delaware Court of Chancery seeking the dissolution and sale of the company to implement, in effect, a business divorce.  *In re Shawe & Elting LLC*, Nos. 9661-CB, 9686-CB, 10449-CB, 2015 WL 4874733, at *2, *22 (Del. Ch. Aug. 13, 2015).  (D.I. 1 ("Compl.") ¶ 13.)  At that time, Elting owned 50% of the corporation, Shawe owned 49%, and Shawe's mother owned 1%.  *In re Shawe & Elting*, 2015 WL 4874733, at *1.  (Compl. ¶¶ 5–6, 12–13.)

In August 2015, Chancellor Bouchard issued a post-trial decision finding that "the state of management of the corporation has devolved into one of complete dysfunction between Shawe and Elting," and he ordered that TPG should be dissolved and sold.  *In re Shawe & Elting*, 2015 WL 4874733, at *1.  (Compl. ¶ 14.)  The Chancellor appointed Robert B. Pincus as a custodian to oversee a judicially ordered sale of the company.  *In re Shawe & Elting*, 2015 WL 4874733, at *32, *41.  (Compl. ¶ 14.)

In July 2016, the Chancery Court ordered that the sale should occur pursuant to a "modified auction" process "where each stockholder could solicit third-party investors as partners in an acquisition of TPG, and where the Custodian could work with the outside bidders who are

---

    [2] Because I write primarily for the parties, I will recite only those facts and allegations necessary to resolve the instant motions.  In deciding a motion to dismiss, the Court may consider only the allegations in the complaint, exhibits attached to the complaint, documents integral to or explicitly relied on in the complaint, and matters of public record.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999).  I refer to several judicial proceedings relating to the allegations in the Complaint; many of those court proceedings are expressly referred to or relied upon in the Complaint.

interested in purchasing TPG, but not necessarily interested in partnering with an existing stockholder in connection with any acquisition." *In re TransPerfect Glob., Inc.*, Nos. 9700-CB, 10449-CB, 2016 WL 3949840, at *1–2 (Del. Ch. July 18, 2016) ("Sale Order"). (Compl. ¶ 21.) The Sale Order required Pincus to consider various economic and non-economic factors, "with a view toward maintaining the business as a going concern and maximizing value for the stockholders." *Id.* at *1, *6. The Sale Order generally gave Pincus "full and exclusive authority" (within certain guidelines) to establish the auction's processes and procedures, to evaluate offers, and to determine the winner, but it limited the forms of consideration "to cash and marketable securities, except as a stockholder may elect." *Id.* at *2–3. (Compl. ¶ 22.) Pincus thereafter conducted a multi-round auction with numerous bidders. *In re TransPerfect Glob.*, Nos. 9700-CB, 10449-CB, 2018 WL 904160, at *1 (Del. Ch. Feb. 15, 2018). (Compl. ¶¶ 23, 30.)

The auction ultimately became a contest between Shawe—acting through a company that later became Plaintiff in this case—and H.I.G. Middle Market, LLC. *In re TransPerfect Glob.*, 2018 WL 904160, at *11–13. (Compl. ¶¶ 1, 55–77.) Pincus required each to submit its final bid on November 15, 2017. *In re TransPerfect Glob.*, 2018 WL 904160, at *11–12. (Compl. ¶¶ 66–67.) Although the "headline" amount of H.I.G.'s November 15, 2017, bid was higher than Shawe's bid, Pincus later told the Chancery Court that he took into account substantial non-economic benefits included in Shawe's bid and that, as a result, Pincus determined to conduct further negotiations with Shawe exclusively. *In re TransPerfect Glob.*, 2018 WL 904160, at *11–12, *19. (Compl. ¶¶ 68, 71.) After a meeting between Pincus and Shawe on November 16, 2017, Shawe raised the headline economic value of his bid to $770 million. *In re TransPerfect Glob.*, 2018 WL 904160, at *12. (Compl. ¶ 72.) Pincus determined Shawe to be the winner, and the parties

4

executed a securities purchase agreement ("SPA") on November 19, 2017, for Plaintiff to purchase

TPG.  *In re TransPerfect Glob.*, 2018 WL 904160, at *12.  (Compl. ¶ 77.)

Chancellor Bouchard approved the transaction on February 15, 2018.  *In re TransPerfect*

*Glob.*, 2018 WL 904160, at *12.  (Compl. ¶ 81.)  The Delaware Supreme Court affirmed.  *Elting*

*v. Shawe*, 185 A.3d 694 (Table) (Del. 2018) (affirming the Feb. 15, 2018, order approving the

transaction); *Shawe v. Elting*, 157 A.3d 152 (Del. 2017) (affirming the Sale Order).  Plaintiff now

owns TPG, and Shawe owns 99% of Plaintiff.  (Compl. ¶ 1.)

Despite ultimately winning the auction for TPG, the public record reflects that Shawe was,

to put it mildly, disappointed with the Chancellor's order that the company should be auctioned

and with the court-ordered process for the sale.  As the Delaware Supreme Court put it last year,

"[a]side from a brief *détente* when he won the auction, Shawe has been—to be charitable—

unsupportive of Pincus's court-mandated role with TPG.  The result has been seemingly endless

litigation in Delaware, New York, and Nevada, millions in contested legal fees, and an inability to

agree on any material aspect of Pincus's tenure as Custodian, up to and including his discharge."

*TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630, 635 (Del. 2022), *cert. denied*, 143 S. Ct. 574

(Jan. 9, 2023).

The Delaware Supreme Court wasn't exaggerating about the litigation being "seemingly

endless."  The public record reflects that Shawe, his company, and his associates, filed numerous

lawsuits related to the Chancery Court sale proceedings in the state and federal courts.  For

example:

- In April 2016, Shawe and his mother filed three lawsuits in New York state court against Elting's attorney, financial advisor, and her husband and his employer. *Shawe v. Elting*, Nos. 153375, 652482, 652664, 2017 WL 2882221 (N.Y. Sup. Ct. June 29, 2017).   The court granted motions to dismiss the lawsuits for failure to state a claim.  The court stated, "given the borderline frivolity of these lawsuits, Philip and Shirley Shawe are cautioned that the maintenance of future suits in this

court that are barred by the outcome of the Delaware action may result in sanctions and a filing injunction." *Id.* at *14.

- In July 2016, a TPG employee filed a lawsuit against Chancellor Bouchard and Pincus in the United States District Court for the Southern District of New York. *Holland v. Bouchard*, No. 16-5936, 2017 WL 4180019 (S.D.N.Y. Sept. 19, 2017). The court granted a motion to dismiss the case on *Younger* abstention grounds. *Id.* at *1–2.

- In March 2017, Shawe filed a lawsuit against Pincus and then-Delaware Secretary of State Jeffrey Bullock in the United States District Court for the District of Delaware. *Shawe v. Pincus*, 265 F. Supp. 3d 480 (D. Del. 2017). (Compl. ¶ 83.) The court held that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. *Id.* at 484.

- In April 2017, Shawe's mother filed a lawsuit against TPG in the Chancery Court, seeking to compel it to hold an annual meeting of its stockholders. *In re TransPerfect Glob., Inc.*, No. 2017-0306, 2017 WL 3499921 (Del. Ch. Aug. 4, 2017). The Chancery Court held that TPG need not respond to the action. *Id.* at *5.

- In September 2017, Shawe filed another lawsuit against Pincus in the United States District Court for the Southern District of New York. *Shawe v. Pincus*, No. 17-6673 (S.D.N.Y). (Compl. ¶ 83.) That case was voluntarily dismissed in March 2018.

- In September 2017, Shawe filed a lawsuit in the United States District Court for the District of Delaware against another lawyer and law firm that represented Elting in the Delaware proceedings. *Shawe v. Potter Anderson & Corroon LLP*, No. 17-1348, 2017 WL 6397342 (D. Del. Dec. 8, 2017). The court determined that the complaint violated Rule 11. The court imposed sanctions on Shawe and his attorney and dismissed the case *sua sponte*. *Id.* at *1, *5.

- In October 2017, Shawe's mother filed a lawsuit in the Chancery Court against TPG to enforce a books and records inspection demand. *Shawe v. TransPerfect Glob., Inc.*, No. 2017-0697 (Del. Ch.). That action was stayed, then dismissed after the auction concluded.

- In April 2019, TPG filed a lawsuit in the United States District Court for the Southern District of New York against H.I.G. and its affiliate for misappropriation of trade secrets and other claims arising out of H.I.G.'s access to TPG's information during the auction. *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, 19-3283, 2022 WL 195836 (S.D.N.Y. Jan. 21, 2022). The court granted summary judgment to the defendants on all claims. *Id.* at *3. The Second Circuit Court of Appeals affirmed. *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 22-1348, 2024 WL 177726 (2d Cir. Jan. 17, 2024).

- In August 2019, TPG filed a lawsuit against Pincus in Nevada state court. *TransPerfect Glob., Inc. v. Robert B. Pincus*, No. A-19-800185-B. That lawsuit was voluntarily dismissed one day before TPG was to begin accumulating a $30,000-per-day fine as a sanction for violating the Chancery Court's prior orders. *TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630, 640–41 (Del. 2022).

- On August 18, 2020, TPG filed a lawsuit in New York state court against its former Delaware attorney in the Chancery Court proceedings and his law firm. That action was later refiled in the Chancery Court. *TransPerfect Glob., Inc. v. Ross Aronstam & Moritz LLP*, No. 2021-0065, 2022 WL 803484 (Del. Ch. Mar. 17, 2022). The Chancery Court dismissed the complaint for failure to state a claim. *Id.* at *1, *12.

- In December 2020, Shawe filed another lawsuit against Chancellor Bouchard in the United States District Court for the District of Delaware. *Shawe v. Bouchard*, No. 20-1770, 2021 WL 1380598, at *8 (D. Del. Apr. 12, 2021). The court dismissed that case for lack of subject matter jurisdiction.

All of these proceedings were in addition to the contentious litigation in the actual Chancery Court case regarding the sale of TPG. In that case, the Chancellor found that Shawe "acted in bad faith and vexatiously" by "obstruct[ing] discovery, conceal[ing] the truth, [] imped[ing] the administration of justice[,] . . . needlessly complicat[ing] and protract[ing] these proceedings to Elting's prejudice, all while wasting scarce resources of the Court." *In re Shawe & Elting LLC*, Nos. 9661-CB, 9686-CB, 9700-CB, 10449-CB, 2016 WL 3951339, at *1 (Del. Ch. July 20, 2016), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 142 (Del. 2017), *cert. denied*, 138 S. Ct. 93 (Oct. 2, 2017). TPG is still litigating its challenges to Pincus's fee petitions in that case. *In re TransPerfect Glob., Inc.*, No. 9700-CM, 10449-CM, 2023 WL 7182135, at *1 (Del. Ch. Nov. 1, 2023), *cert. denied*, 2023 WL 8281559 (Del. Ch. Nov. 30, 2023), and *appeal refused sub nom. TransPerfect Glob., Inc. v. Pincus*, 309 A.3d 433 (Del. 2023); *In re TransPerfect Glob., Inc.*, No. 9700-CM, 10449-CM, 2023 WL 5017248 (Del. Ch. Aug. 7, 2023), *reargument denied*, 2023 WL 6387785 (Del. Ch. Sept. 22, 2023).

Back in 2018, the Chancery Court entered an order barring Shawe and his agents from suing Pincus and his advisors. *In re TransPerfect Glob., Inc.*, Nos. 9700-CB, 10449-CB, 2018 WL 992994 (Del. Ch. Feb. 15, 2018).[3]   Then, after the sale, the Chancery Court entered another order barring Plaintiff from pursuing any claim arising out of Pincus's service as custodian. *In re TransPerfect Glob., Inc.*, No. 9700-CB, 2021 WL 1415772 (Del. Ch. Apr. 14, 2021), *aff'd sub nom. TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022).   The Chancery Court also ordered that Pincus was entitled to judicial immunity. *Id.*

## B.      This litigation

Notwithstanding the Chancery Court's litigation bar and its order regarding judicial immunity, Plaintiff filed this lawsuit against Defendants Pincus and Credit Suisse on November 9, 2022.   Plaintiff says that during the court-ordered auction in November 2017, Defendants told Shawe that he had the low bid at a time when he, in fact, had the high bid.   Notwithstanding that the bidding process occurred pursuant to a court-ordered procedure and was conducted by a court-appointed custodian, Plaintiff says that the statements by the custodian and his financial advisor amounted to federal securities fraud.   Plaintiff's "First Claim for Relief" alleges that Pincus violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5(b), and the "Second Claim for Relief" alleges that Credit Suisse violated the same.

Defendants have moved to dismiss.[4]   (D.I. 20, 24.)

---

[3]  In 2019, the Chancellor found TPG in contempt for violating the court's order after TPG sued Pincus in Nevada for breach of fiduciary duty and related claims. *In re TransPerfect Glob., Inc.*, No. 9700-CB, 2019 WL 5260362, at *10–13 (Del. Ch. Oct. 17, 2019), *affirmed in relevant part sub nom. TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022).

[4] The case was previously assigned to another District Judge of this Court.   On April 5, 2023, he referred Defendants' motions to dismiss to me in my former capacity as a U.S. Magistrate Judge.   (D.I. 32.)   I held a hearing on the motions on June 16, 2023.   On September 12, 2023, I

issued a Report and Recommendation that recommended that both motions be granted and that the Complaint be dismissed with prejudice.  (D.I. 38.)  Plaintiff filed objections to the Report and Recommendation, and Defendants responded.  (D.I. 40, 41.)  On January 4, 2024, I became a District Judge, and on January 9, 2024, the case was reassigned to me.  Defendants' motions to dismiss remained pending at the time of the reassignment.

On February 2, 2024, Plaintiff filed a motion styled, "Plaintiff's Motion for Reassignment or Recusal."  (D.I. 49.)  Plaintiff argues that either the Court should reassign this case to another judge or I should recuse myself from hearing the matter.  Defendants "take[] no position" on the motion, but they say that Plaintiff's motives are (among other things) "to forum-shop to a decisionmaker who lacks District Court Judge Hall's knowledge of this case (and of Plaintiff's vexatious conduct of it to date)" and, "in the event th[e] Motion for Reassignment or Recusal is denied, to generate a (meritless) argument for judicial error that Plaintiff can use before the Third Circuit to multiply and prolong the vindictive campaign by Plaintiff's 100% owner Philip Shawe against Mr. Pincus."  (D.I. 51 at 4–5.)

Plaintiff does not cite any case in which a court held that a district judge abuses its discretion by declining to recuse itself from a case in which that judge previously issued as a magistrate judge, and the Court has found none.  Plaintiff cites 28 U.S.C. § 47, which provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him."  That statute is inapplicable because it only applies to judges sitting on appeal.  *See* 28 U.S.C. § 47 (set forth in U.S. Code, Title 28, Chapter 3 – Courts of Appeals); *United States v. Zarowitz*, 326 F. Supp. 90, 92 n.4 (C.D. Cal. 1971) (remarking that 28 U.S.C. § 47 "has absolutely nothing to do with the District Courts"); 13D Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3545 (3d ed. 2024).  Plaintiff also cites *Dawson v. Marshall*, 561 F.3d 930 (9th Cir. 2009), but that case expressly held that it "violated no law and denied [] no right" for a district judge to issue an order on a motion that he previously issued a report and recommendation on as a magistrate judge.  *Id.* at 933; *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 13-705, 2015 WL 1321578, at *2–3 (E.D. Tex. Mar. 24, 2015) (same).

Plaintiff argues that my recusal is necessary under 28 U.S.C. § 455(a) to avoid "an appearance of impropriety."  (D.I. 50 at 1.)  Pursuant to 28 U.S.C. § 455(a), a judge is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The test for recusal under § 455(a) is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004).  But "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Plaintiff has not argued that the Report and Recommendation demonstrated any favoritism or antagonism.  The Report and Recommendation was issued in these same proceedings in this court, so it does not constitute a basis for a partiality motion.  (That makes the circumstances here wholly unlike those in *Clemmons v. Wolfe*, 377 F.3d 322, 329 (3d Cir. 2004), where a federal district judge was being asked to pass upon his prior actions in a state court case in which he sat as the state court judge.)  Plaintiff clearly takes issue with the conclusions set forth in the Report and Recommendation.  But a reasonable, well-informed observer would not question my impartiality.

9

## II.    LEGAL STANDARDS

The elements of a § 10(b) securities fraud claim are "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (citation omitted).

A plaintiff bringing a § 10(b) claim must satisfy the heightened pleading standards imposed by the Private Securities Litigation Reform Act ("PSLRA"). *Id.* The PSLRA requires the pleadings to identify "each statement alleged to be misleading" and to specify "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires a pleading alleging a § 10(b) claim to "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which the

---

Plaintiff argues that it is entitled to a *de novo* review of the Report and Recommendation. Accordingly, in coming to the below conclusion that Defendants' motions to dismiss should be granted, I have conducted a *de novo* review, and I have fully considered Plaintiff's objections on the merits. Plaintiff argues that the Report and Recommendation "improperly shift[ed] the burden of disproving the statute of limitations defense to Plaintiff, f[ound] facts that could not be adduced from the Complaint or the documents referenced therein, fail[ed] to draw reasonable inferences in Plaintiff's favor, and misappl[ied] the exacting discovery standard under *Merck* [*& Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010)] so as to deny Plaintiff its Seventh Amendment right to a jury trial." (D.I. 40 at 3.) I disagree with Plaintiff's characterization of the Report and Recommendation, and I reject Plaintiff's arguments. The law remains clear after *Merck* that courts may grant motions to dismiss securities fraud claims on statute of limitations grounds where the allegations in the complaint and other appropriately-considered materials establish the defense—notwithstanding a plaintiff's contention that a reasonably diligent investor would not have discovered the fact of scienter earlier. *See, e.g., Johnny Karp Invs., LLC v. Kyriakoulis*, 837 F. App'x 938, 939 (3d Cir. 2021) (affirming dismissal on statute of limitations grounds); *McCullough v. Advest, Inc.*, 754 F. App'x 109, 113 (3d Cir. 2018) (same). That is the circumstance here.

Plaintiff's Motion for Reassignment or Recusal (D.I. 49) will be DENIED. To the extent it is necessary, Plaintiff's objections are OVERRULED. To the extent it is necessary, the Court's reference of all pre-trial proceedings to a Magistrate Judge (D.I. 32) is WITHDRAWN.

Third Circuit has described as "one 'embracing [an] intent to deceive, manipulate, or defraud,'" either knowingly or recklessly," *Hertz*, 905 F.3d at 114 (citation omitted). "A complaint adequately pleads a strong inference of scienter 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

A § 10(b) claim must be filed "not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). A § 10(b) claim "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first," and "the 'facts constituting the violation' include the fact of scienter." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010) (quoting 28 U.S.C. § 1658(b)(1)). "[A] district court may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

## III.    DISCUSSION

Defendants make many arguments in support of dismissal, including, but not limited to, the following: (1) the suit violates the Chancery Court's bar order; (2) Defendants possess judicial immunity; (3) the suit is barred by judicial estoppel; (4) the claims are time-barred; (5) the SPA released Plaintiff's claims against Defendants; (6) the Complaint fails to state a claim because it does not plausibly allege a false statement; (7) the Complaint fails to state a claim because it does not allege facts giving rise to a strong inference of scienter; (8) the Complaint fails to state a claim because it does not plausibly allege reliance; and (9) the Complaint fails to state a claim because

11

it does not adequately allege loss causation.  Because I agree that the § 10(b) claims are time-barred, I don't address the rest of Defendants' arguments.

      **A.**      **The § 10(b) claims are barred by the statute of limitations.**

Plaintiff filed the Complaint on November 9, 2022.  Thus, the § 10(b) claims are untimely if Plaintiff knew (or a reasonably diligent plaintiff would have discovered) the facts constituting the violations before November 9, 2020.  *See Merck*, 559 U.S. at 637.  As explained below, Plaintiff knew the facts constituting the alleged violations no later than February 2018.

Plaintiff alleges[5] that Credit Suisse made a material misrepresentation on November 10, 2017, when it told Plaintiff's agent that Plaintiff's November 8, 2017, bid "was the low bid now" and that Plaintiff needed to bid its "best number" to "position" it to "win."  (Compl. ¶ 124.) According to the Complaint, that statement was false because, although H.I.G.'s bid had a higher headline value, Plaintiff's bid was higher because H.I.G.'s bid included a $100 million seller note that did not qualify as consideration under the Sale Order.  (*Id*. ¶ 99.)  Plaintiff says it relied on and was damaged by Credit Suisse's misrepresentation because it caused Plaintiff to increase its bid by $10 million at a time when Plaintiff already had the highest bid.  (*Id.* ¶ 128.)

Plaintiff alleges that Pincus made a similar misrepresentation at the meeting on November 16, 2017, when he allegedly told Shawe that Pincus had "bids that are higher than yours, including one bid that is substantially higher."  (*Id.* ¶¶ 97–98.)  According to the Complaint, that statement was false because Pincus knew that H.I.G.'s bid was comprised of, among other things, a $125 million seller note that allegedly could not be considered under the Sale Order.  (*Id.* ¶¶ 70, 99–102.)  In other words, according to Plaintiff, H.I.G.'s inclusion of the $125 million note meant that

---

[5] For purposes of the motions to dismiss, I assume that all of Plaintiff's well-pleaded allegations are true.

its bid was not "substantially higher," and Pincus knew that, but Pincus lied to Plaintiff to induce it to increase its bid. (*Id.* ¶ 97.)   Plaintiff says it relied on and was damaged by Pincus's misrepresentation about others having higher bids because it caused Plaintiff to increase its bid by $70 million at a time when Plaintiff had a superior bid. (*Id.* ¶¶ 113–14.)

The problem for Plaintiff is that it knew all the facts amounting to (what Plaintiff now contends are) the alleged § 10(b) violations no later than February 2018 when the Chancery Court issued an order and opinion approving the sale of TPG to Plaintiff.  The Chancery Court's lengthy opinion sets forth the details of the bids received by Pincus during the auction process, including the allegedly important fact that H.I.G.'s bids included a "seller note" that did not qualify as consideration under the Sale Order.  *In re TransPerfect Glob.*, 2018 WL 904160, at *11, Table 1 (bid chart listing the "face value of seller note" in H.I.G.'s bid as $125 million as of November 15, 2017).  (Compl. ¶ 81 (citing the Chancery Court's February 2018 opinion).)

Plaintiff does not say that the Chancery Court's description of the bids received by Pincus during the auction was inaccurate.  Nor does Plaintiff dispute that it knew the relevant details about the other bids as of February 2018.  Instead, Plaintiff makes an argument that essentially goes like this: Plaintiff learned no later than February 2018 that its bids had been superior all along.  But what Plaintiff did not know was that Pincus had also valued Plaintiff's bid as superior at the times when Plaintiff was told there were higher bids.  According to Plaintiff's Complaint, it did not discover that fact until February 2021, when it learned (through discovery in yet another litigation) that, on November 22, 2017, Brian McDonald of Houlihan Lokey (an investment banking firm) spoke with Pincus and then sent an email to H.I.G.'s Managing Directors stating, "among other things, that 'Pincus gave zero credit for all conditional payments: seller note, escrow, holdbacks etc.' and 'Pincus viewed HIG's prior bid as being about $50 million lower than Shawe's.'"

(Compl. ¶¶ 62, 85.)[6]  Plaintiff contends that because it did not discover this email until February 2021, it did not know before that time that Pincus believed that Plaintiff's bid was superior to H.I.G.'s at the time when Pincus told Plaintiff that there were higher bids.  (D.I. 28 at 16–18.) Plaintiff claims that it thus did not discover the facts demonstrating Pincus's scienter until 2021, and the limitations period did not start running until then.  Plaintiff makes this argument even though Plaintiff knew all along that the 2016 Sale Order allegedly prohibited Pincus from crediting H.I.G.'s proposed $125 million seller note.  (Compl. ¶¶ 99–100.)

I reject Plaintiff's argument.  As an initial matter, Plaintiff cites the Supreme Court's *Merck* case for the proposition that the limitations period doesn't begin to run in a § 10(b) case until the claimant discovers the facts demonstrating scienter.  But that case doesn't support Plaintiff's position that it didn't discover, and a reasonably diligent plaintiff would not have discovered, the facts constituting scienter until 2021.  In *Merck*, the crucial facts relating to scienter involved internal company studies that allegedly contradicted the company's public statements, and the Supreme Court ruled that the plaintiffs could not have known of the facts supporting scienter before they were aware of those previously unknown internal studies.  559 U.S. at 653–54.  In this case, Plaintiff learned about the previously unknown details of the other bids that Plaintiff says contradict Defendants' statements no later than February 2018.  My conclusion that the clock started running at that time is thus consistent with *Merck*.

But even if I credited Plaintiff's argument that the crucial evidence it needed to learn to demonstrate the fact of scienter was additional evidence showing that Defendants subjectively believed Plaintiff's bid to be the superior bid at a time when they told him it was the low bid, Plaintiff also had that evidence back in 2018.  Regarding the alleged misrepresentation by Credit

---

[6] Plaintiff did not include this email as an exhibit to the Complaint.

Suisse that Plaintiff's November 8, 2017, bid "was the low bid now," the Chancery Court's February 2018 opinion laid bare that a bid analysis prepared by Credit Suisse and others showed that Shawe's November 8, 2017, bid "yield[ed] the highest amount of after-tax net proceeds." *In re TransPerfect Glob.*, 2018 WL 904160, at *11. Indeed, in an April 2018 brief submitted to the Delaware Supreme Court, Plaintiff itself argued that "the Custodian—with the advice of . . . Credit Suisse . . . —determined that Shawe's November 8, 2017, final offer was superior to H.I.G.'s . . . on both net proceeds and all key non-economic terms." Answering Br. of Respondent-Below/Appellee Philip R. Shawe, *Elting v. Shawe*, 2018 WL 2245981, at *13–14 (Apr. 5, 2018) (No. 90, 2018).[7]  In other words, Plaintiff knew by early 2018—and even told the Delaware Supreme Court that it knew—the same fact that it now claims it did not know until 2021.

Regarding the alleged misrepresentation by Pincus on November 16, 2017, that he had "bids that are higher than yours, including one bid that is substantially higher," again, Plaintiff does not dispute that H.I.G.'s headline amount was in fact higher. Nor does Plaintiff dispute that it knew by February 2018 that H.I.G. had not made a "substantially higher" bid if H.I.G.'s proposed seller note was disregarded, which Plaintiff contends was required by the Sale Order. Plaintiff contends, however, that it didn't know until 2021 that Pincus did not actually believe that H.I.G. had made a substantially higher bid. But in his brief to the Delaware Supreme Court in April 2018 arguing for affirmance of the Chancery Court's order approving the SPA, Shawe (through his attorneys) wrote the following:

> As the Custodian [Pincus] documented, and as the Court's findings demonstrate, the Custodian [Pincus]—with the advice of tax and transaction experts from Skadden Arps, Credit Suisse, and Ernst & Young, whose qualifications are unchallenged—determined that

---

[7] I take judicial notice of Shawe's brief to the Delaware Supreme Court, which is publicly available on Westlaw. *Cf. In re Merck & Co., Inc. Sec., Derivative, & "ERISA" Litig.*, 543 F.3d 150, 153 n.1 (3d Cir. 2008), *aff'd sub nom. Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).

> Shawe's November 8, 2017 final offer was superior to H.I.G.'s (and
> Blackstone's) on both net proceeds and all key non-economic terms,
> including maintaining the business as a going concern, lack of
> conditionality, and certainty of closing.  Moreover, *as of November
> 15, Shawe's offer remained far superior on those key non-economic
> terms . . . and was very close on net proceeds.*

*Id.* (emphasis added).  (D.I. 29, Ex. 1 at 7.)  In other words, Shawe actually knew—and told

Delaware's highest court—back in 2018 that Pincus did not think H.I.G.'s bid as of November 15,

2017, was substantially higher.  Thus, even if I were to accept Plaintiff's argument that it needed

additional evidence of Pincus's scienter besides the details of the competing bids, the limitations

period for the § 10(b) claims still would have lapsed no later than 2020.[8]  Because the Complaint

wasn't filed until 2022, the action is barred by the statute of limitations.

### B.    The Complaint should be dismissed with prejudice.

Plaintiff requested leave to amend its Complaint in a footnote in an Answering Brief and

did not provide a draft amended complaint.  (D.I. 27 at 22 n.13.)  "While Rule 15(a) provides that

leave to amend should be 'freely given,' a district court has discretion to deny a request to amend

if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith,

or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the

---

[8] As explained above, Shawe had actual knowledge of the facts constituting Pincus's alleged violation back in 2018.  The record before the Court also compels the conclusion that a reasonably diligent plaintiff would have discovered the fact of Pincus's alleged scienter in 2018, if Plaintiff is correct that the 2016 Sale Order barred Pincus from crediting H.I.G.'s seller note, because Plaintiff knew the details of H.I.G.'s bid no later than February 2018.  *See Merck*, 559 U.S. at 627 (holding that a § 10(b) claim "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'— whichever comes first"); *see also In re TransPerfect Glob.*, 2018 WL 904160, at *1 (explaining that H.I.G.'s November 15 bid contained a $125 million "seller note"); Compl. ¶ 99 ("Pincus and Credit Suisse knew that . . . the $125 million seller note comprising a portion of H.I.G.'s November 15 bid[] could not be credited toward the value of that bid because the Sale Order limited the 'forms of consideration . . . [sic] shall be limited to cash and marketable securities, except as a shareholder may elect.'").

other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Here, leave to amend should be denied for the independent reasons that it would be futile and that allowing amendment would be prejudicial to Defendants.

First, amendment would be futile because the claims are prohibited by the statute of limitations. *See, e.g.*, *New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x. 70, 74 (3d Cir. 2016) (affirming district court's dismissal with prejudice on ground that amendment would be futile because the action was filed outside the limitations period); *Ostuni v. Wa Wa's Mart*, 532 F. App'x. 110, 111–12 (3d Cir. 2013); *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001).

Second, allowing amendment in these circumstances would be inequitable and prejudicial to Defendants. This action is the latest in a multitude of lawsuits brought by Shawe and/or TPG arising out of the auction. Shawe and/or TPG have been sanctioned at least three times by federal and state courts.[9] Pincus has been named as a defendant in at least four suits. The repeated litigation led the Court of Chancery to enter an order over four years ago barring Shawe and his agents from filing more suits arising out of Pincus's service as custodian. *In re Transperfect Glob.*, 2018 WL 992994. And other courts have considered imposing a filing injunction against Shawe and have warned him about filing further suits.[10] Plaintiff has had numerous opportunities to litigate its grievances resulting from the auction. It is prejudicial to force Defendants to spend their time and resources re-litigating issues that have already been litigated.

---

[9] *TransPerfect Glob., Inc. v. Pincus*, 278 A.3d at 644; *Shawe v. Potter Anderson & Corroon LLP*, 2017 WL 6397342, at *1–5; *Shawe v. Elting*, 157 A.3d 142, 144–45 (Del. 2017).

[10] *Shawe v. Potter Anderson & Corroon LLP*, 2017 WL 6397342, at *5 ("[B]ecause a filing injunction is such a drastic remedy, we will echo the New York Supreme Court's warning and afford Shawe a 'strike two' in declining to issue an injunction. In doing so, we express our opinion that any future court plagued by subsequent frivolous lawsuits brought by Shawe to collaterally attack the Delaware rulings should very seriously consider imposing an injunction to put a final end to this behavior."); *Shawe v. Elting*, 2017 WL 2882221, at *14.

A New York state court stated back in 2017, "It is time for this saga to end." *Shawe v. Elting*, 2017 WL 2882221, at \*14.  If that was true in 2017, it is certainly true in 2023.  The Complaint will be dismissed with prejudice.[11]

## IV.    CONCLUSION

For the reasons set forth above, the Complaint (D.I. 1) will be dismissed with prejudice. An appropriate order will follow.

---

[11] Plaintiff argues that the Report and Recommendation erroneously failed to conduct a "considered analysis of whether amendment would actually be futile" and instead "based [the] decision on [an] overriding belief that 'it is time to bring this saga to an end.'" (D.I. 40 at 10.)  I disagree with Plaintiff's characterization of the Report and Recommendation, and I reject Plaintiff's argument.  The allegations in the Complaint and other appropriately-considered materials demonstrate that the claim is time-barred.  No amendment can fix that.  Thus, it is—literally—time for this saga to end.